## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**AJE Enterprise LLC d/b/a Whisper**
**Night Club and Lounge**
**Adam Ereditario**

**BITS LLC d/b/a Fat Daddy's**
**Briana Weisen**

**DRD2 LLC d/b/a Almost Heaven**
**Bar & Grill**
**Danielle Dufalla**

**Baby Squirrels, LLC**
**Baby Squirrels Saloon**
**Travis Tracy**

**B.F. Ugly's d/b/a Big Times**
**Zach Traugh**

**Caribba Foods, LLC d/b/a/Crab Shack**
**Caribba and Dockside Grille**
**Bron Kayal**

**Cecelia's d/b/a Joe Mama's**
**Joe Blodgett**

**Extensive Enterprises**
**Kenneth Dufalla**

**Mountain Mamas Hot Spot LLC**
**Mountain Mamas Tavern LLC**
**Megan and Jacob Samples**

**SAR Tech LLC and SHC LLC**
**Steve Reese**

**JL3 LLC**
**The Annex**
**Chris Hare**

**Ray G 4th and Goal d/b/a 4th & Goal**
**Rag G Scorers d/b/a Scorers**
**Ray Glymph**
                    **Plaintiffs,**

ELECTRONICALLY
FILED
Sep 21 2020
U.S. DISTRICT COURT
Northern District of WV

Case No. _____  **1:20-CV-229 (Kleeh)**

Hon. Judge _____  **Kleeh**

**v.**

**James Justice, in his capacity as
Governor of West Virginia,**

**Frederic L. Wooton, in his capacity
as the West Virginia Alcohol Beverage
Control Administration Commissioner,**

**The City of Morgantown**

**Emily Muzzarelli, as her capacity as the
Interim City Manager of Morgantown
            Defendants.**

## <u>COMPLAINT</u>

Now Come, the plaintiffs, AJE Enterprise LLC d/b/a Whisper Night Club and Lounge,

Adam Ereditario, BITS LLC d/b/a Fat Daddy's, Briana Weisen, DRD2 LLC d/b/a Almost

Heaven Bar & Grill, Danielle Dufalla Baby Squirrels, LLC Baby Squirrels Saloon Travis Tracy,

B.F. Ugly's d/b/a Big Times, Zach Traugh, Caribba Foods, LLC d/b/a/Crab Shack Caribba and

Dockside Grille, Bron Kayal, Cecelia's d/b/a Joe Mama's, Joe Blodgett Extensive Enterprises,

Kenneth Dufalla, Mountain Mamas Hot Spot LLC Mountain Mamas Tavern LLC , Megan and

Jacob Samples, SAR Tech LLC and SHC LLC, Steve Reese, The Annex, Chris Hare, and Ray G

4th and Goal d/b/a 4th & Goal, Ray G Scorers d/b/a Scorers, Ray Glymph, by and through their

counsel, Martin P. Sheehan and Sheehan & Associates, PLLC and for their Complaint against

the defendants, James Justice, in his capacity as Governor of West Virginia, Frederic L. Wooton,

in his capacity as the West Virginia Alcohol Beverage Control Administration Commissioner,

the City of Morgantown, and Emily Muzzarelli, as her capacity as the Interim City Manager of

Morgantown , hereby allege as follows:

I.       **THE PARTIES**

A.       **Plaintiffs**

1.       AJE Enterprise LLC d/b/a DBA Whisper Night Club and Lounge and represented by Adam Ereditario is a West Virginia limited liability corporation.  This entity operated within the City of Morgantown.

2.       Bits LLC d/b/a Dat Daddy's LLC and represented by Briana Wiesen is a West Virginia limited liability corporation.  This entity operated within the City of Morgantown.

3.        DRD2 LLC d/b/a Almost Heaven Bar & Grill and represented by Danielle Dufalla is a West Virginia limited liability corporation. This entity operated within the City of Morgantown.

4.       Baby Squirrels LLC d/b/a Baby Squirrels Saloon and represented by Travis Tracy is a West Virginia limited liability corporation.  This entity operated within the City of Morgantown.

5.       B.F. Ugly's d/b/a Big Times and represented by Zach Traugh is a West Virginia limited liability corporation.  This entity operated within the City of Morgantown.

6.       Caribba Foods, LLC d/b/a Crab Shack Caribba and Dockside Grille and represented by Bron Kayal is a West Virginia limited liability corporation. This entity operated within the City of Morgantown.

7.       Cecelia's, Inc. d/b/a Joe Mama's and represented by Joe Blodgett is a West Virginia corporation.  This entity operated within the City of Morgantown.

8.       Extensive Enterprises, LLC and represented by Kenneth Dufalla is a West Virginia limited liability corporations.  This entity operated within the City of Morgantown.

9.      Mountain Mamas Hot Spot LLC and Mountain Mamas Tavern LLC and represented by Megan and Jacob Samples are West Virginia limited liability corporations.  This entity operated within the City of Morgantown.

10.      SAR Tech LLC and SHC LLC are West Virginia limited liability corporations and represented by Steve Reese.  This entity operated within the City of Morgantown.

11.      JL3 LLC d/b/a The Annex and represented by Chris Hare is a West Virginia limited liability corporation.  This entity operated within the City of Morgantown.

12.      Ray G 4th & Goal LLC d/b/a 4th and Goal and Ray G Scorers d/b/a/ Scorers and represented by Ray Glymph is a West Virginia limited liability corporation.  This entity operated within the City of Morgantown.

**B.      The Defendants**

13.      The allegations of all prior paragraphs one (1) through twelve (12) are incorporated herein by reference as if more fully set forth herein.

14.      James Justice in his Official Capacity as Governor of the State of West Virginia, a person required by Article VII, section 1, of the Constitution of the State of West Virginia to reside at the seat of Government, which is in Charleston, West Virginia pursuant to Article VI, Section 20 of the Constitution of the State of West Virginia.

15.      Frederic L. Wooton, the West Virginia Alcohol Beverage Control Administration Commissioner, in his official capacity, whose office address is 900 Pennsylvania Ave., 4th Floor, Charleston, WV 26305.

16.      The City of Morgantown, c/o Emily Muzzarelli, the Interim City Manager of the City of Morgantown, West Virginia and Emily Muzzarelli in her official capacity of Interim City

Manager of the City of Morgantown. The office address of the City Manager is 430 Spruce Street, Morgantown, WV 26505.

## II.    JURISDICTION AND VENUE

17.    The allegations of all prior paragraphs one (1) through sixteen (16) are incorporated herein by reference as if more fully set forth herein.

18.    This Court has jurisdiction over this action under 28 U.S.C. § 1331. That statute grants jurisdiction over actions arising under the Constitution of the United States and under the laws of the United States.

19.    This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) to protect any right, privilege, or immunity secured by the Constitution of the United States or under the laws of the United State which provide for the equal rights of all persons within the jurisdiction of the United States.

20.    This Court also has jurisdiction under 28 U.S.C. § 1343(b)(4) to recover damages and to secure equitable or other relief under any law of the United States that protects civil rights.

21.    Venue is within this District pursuant to 28 U.S.C. § 1391(b)(2) because the primary effect of the events has been on persons in Monongalia County, West Virginia, a county within the Northern District of West Virginia.

22.    This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over claims related to the claims within the original jurisdiction of the Court, as identified above.

## III.    RELIEF REQUESTED

23.    The allegations of all prior paragraphs one (1) through twenty-two (22) are incorporated herein by reference as if more fully set forth herein.

24. This Complaint seeks a declaratory judgment, and an Injunctive Relief, and an Order of Mandamus directing the institution of condemnation proceedings promptly, and attorney's fees and costs and such damages as may be lawfully collected.

25. Specifically, the Plaintiffs, and each of them, seek a Declaratory Judgment that the Executive Orders identified herein which have been promulgated by the Governor are unenforceable against the Plaintiffs, and each of them, and that various actions taken by the Defendants against the Plaintiffs, and each of them, in reliance on such Executive Orders are unenforceable against the Plaintiffs, and each of them.

26. The Plaintiffs and each of them seek to declare ordinance of the City of Morgantown that purport to limits the otherwise lawful actions of the plaintiffs unenforceable.

## IV.    MATERIAL EXECUTIVE ORDERS

27. The allegations of all prior paragraphs one (1) through twenty-six (26) are incorporated herein by reference as if more fully set forth herein.

28. On March 4, 2020, Governor James Justice of the State of West Virginia declared a State of Preparedness in each county in West Virginia to prepare for the Covid-19 epidemic. A true and correct copy of that Proclamation is attached hereto as Exhibit 1.

29. On March 16, 2020, Governor James Justice of the State of West Virginia declared a State of Emergency in each county in West Virginia to prepare for the Covid-19 epidemic. A true and correct copy of that Proclamation is attached hereto as Exhibit 2.

30. Thereafter, and as will be more specifically set forth below, Governor Justice executed an Additional Proclamation additional new Executive Orders and executed additional Executive Orders that amended previously promulgated Executive Orders.

31.     While the focus of this complaint is on Executive Orders that impact, or tend to impact the operation of bars and restaurants in Monongalia County, West Virginia, the materials attached include all Executive Orders referred to in any such Executive Order so that a complete record of material Executive Orders can be placed in its proper context.

32.     In Executive Order 2-20, a true and correct copy of which is attached hereto as Exhibit 3, on March 18, 2020, Governor Justice ordered, effective at 12:00 a.m. on March 18, 2020, inter alia, that all casinos be closed to the General Public, and that as to all restaurants and bars no such facility would be allowed to permit the "on-premises" consumption of food or drink, or occupancy by the General Public other than to pick up food and/or drink to be taken away.

33.     In Executive Order 3-20, a true and correct copy of which is attached hereto as Exhibit 4, on March 18, 2020, Governor Justice ordered, effective at 12:00 a.m. on March 18, 2020, inter alia, that all fitness centers, gymnasiums, recreation centers, and similar businesses would be prohibited from being occupied by the General Public.

34.     In Executive Order 6-20, a true and correct copy of which is attached hereto as Exhibit 5, on March 19, 2020, Governor Justice ordered, effective at 12:00 a.m. on March 20, 2020, inter alia, that all barber shops, nail salons, and hair salons would be prohibited from being occupied by the General Public.

35.     In Executive Order 8-20, a true and correct copy of which is attached hereto as Exhibit 6, on March 20, 2020, Governor Justice ordered, effective at 12:00 a.m. on March 21, 2020, inter alia, that all state park lodges and the Hatfield McCoy Trail would be prohibited from being occupied by the General Public.

36.     In Executive Order 9-20, a true and correct copy of which is attached hereto as Exhibit 7, and as also known as the "Stay at Home" Order, on March 23, 2020, Governor Justice ordered, effective at 12:00 a.m. on March 24, 2020, inter alia,

    a.   that all non-essential businesses must cease operations,

    b.   that while essential businesses and operation could continue, with additional limitations. As specifically applicable to restaurants and other facilities that prepare and serve food and/or drinks, only such activities as related to consumption of food and/or drinks "off premises" could continue; and,

    c.   that social gatherings of more than 10 people outside of a single household be prohibited.

37.     In Executive Order 16-20, a true and correct copy of which is attached hereto as Exhibit 8, on March 31, 2020, Governor Justice ordered, effective at 12:00 a.m. on April 1, 2020, inter alia, that elective medical procedures would be prohibited.

38.     In Executive Order 20-20, the first "hot spot order," a true and correct copy of which is attached hereto as Exhibit 9, on April 3, 2020 Governor Justice ordered, effective at 12:00 a.m. on April 4, 2020, inter alia,

    a.   that for counties of Berkeley, Jefferson, and Morgan, provisions of the "Stay at Home" Order are amended as follows:

    b.   Engaging in outdoor activity, provided that individuals at all time and as much as reasonably possible maintain social distancing of six feet from one another and abide by a 5-person limitation on gathering size."

39.     In Executive Order 21-20, another "hot spot order," a true and correct copy of which is attached hereto as Exhibit 10, on April 4, 2020, Governor Justice ordered, effective at 12:00 a.m. on April 5, 2020, inter alia,

    a.   that for counties of Harrison, Kanawha, and Monongalia, provisions of the "Stay at Home" Order are amended as follows:

    b.   Engaging in outdoor activity, provided that individuals at all time and as much as reasonably possible maintain social distancing of six feet from one another and abide by a 5-person limitation on gathering size."

40.     In Executive Order 22-20, another "hot spot order,"  a true and correct copy of which is attached hereto as Exhibit 11, on April 8, 2020, Governor Justice ordered, effective at 12:00 a.m. on April 9, 2020, inter alia,

that for the county of Marion, provisions of the "Stay at Home" Order are amended as follows:

    a.   Engaging in outdoor activity, provided that individuals at all time and as much as reasonably possible maintain social distancing of six feet from one another and abide by a 5-person limitation on gathering size."

41.     In Executive Order 24-20, another "hot spot order," a true and correct copy of which is attached hereto as Exhibit 12, on April 10, 2020, Governor Justice ordered, effective at 12:00 a.m. on April 11, 2020, inter alia, that for the counties of Cabell, Ohio, Wayne, and Wood provisions of the "Stay at Home" Order are amended as follows:

    a.   Engaging in outdoor activity, provided that individuals at all time and as much as reasonably possible maintain social distancing of six feet from one another and abide by a 5-person limitation on gathering size."

42.     In Executive Order 25-20, a true and correct copy of which is attached hereto as Exhibit 13, on April 13, 2020, Governor Justice ordered, effective at 12:00 a.m. on April 14, 2020, inter alia, that for the county of Jackson provisions of the "Stay at Home" Order are amended as follows:

     a.     Engaging in outdoor activity, provided that individuals at all time and as much as reasonably possible maintain social distancing of six feet from one another and abide by a 5-person limitation on gathering size."

43.     In Executive Order 28-20, a true and correct copy of which is attached hereto as Exhibit 14, on April 20, 2020, Governor Justice ordered, effective at 12:00 a.m. on April 20, 2020, inter alia, that more urgent medical procedures may be resumed.

44.     In Executive Order 29-20, a true and correct copy of which is attached hereto as Exhibit 15, on April 24, 2020, Governor Justice ordered, effective at 12:00 a.m. on April 25, 2020, inter alia, the removal of "additional heighten measures" for Morgan County and so removed said County from the effect of the "hot spot order as it pertained to said County."

45.     In Executive Order 30-20, a true and correct copy of which is attached hereto as Exhibit 16, on April 27, 2020, Governor Justice ordered, effective at 12:00 a.m. on April 30, 2020, inter alia, that previous executive orders regarding certain health care providers and Chapter 30 health care boards be amended.

46.     In Executive Order 32-20, a true and correct copy of which is attached hereto as Exhibit 17, on April 30, 2020, Governor Justice ordered, effective at 12:01 a.m. on May 4, 2020, inter alia, certain provisions of previous executive orders are amended or terminated as announced in the Comeback Plan.

47.     In Executive Order 33-20, a true and correct copy of which is attached hereto as Exhibit 18, on May 3, 2020, Governor Justice ordered, effective at 12:00 a.m. on May 4, 2020, inter alia, to remove "additional heighten measures" for Kanawha, Ohio, and Jackson counties and so removed said Counties from the effect of the "hot spot order as it pertained to said Counties."

48.     In Executive Order 34-20, a true and correct copy of which is attached hereto as Exhibit 19, on May 4, 2020, Governor Justice ordered, effective at 12:00 a.m. on May 5, 2020, inter alia, to remove "additional heighten measures" for Cabell, Wayne, and Wood Counties and so removed said Counties from the effect of the "hot spot order as it pertained to said Counties."

49.     Following entry of Executive Orders 29-20, 33-20, and 34-20, Executive Order 20-20 applied only in Monongalia County.

50.     In Executive Order 36-20, a true and correct copy of which is attached hereto as Exhibit 20, on May 8, 2020, Governor Justice ordered, effective at 12:01 a.m. on May 11, 2020, inter alia, allowing the reopening of wellness center facilities and drive-in movie theaters.

51.     In Executive Order 37-20, a true and correct copy of which is attached hereto as Exhibit 21, on May 15, 2020, Governor Justice ordered, effective at 12:01 a.m. on May 18, 2020, inter alia, that reopened of fitness centers, gyms, and recreation centers.

52.     In Executive Order 38-20, a true and correct copy of which is attached hereto as Exhibit 22, on May 18, 2020, Governor Justice ordered, effective at 12:00 a.m. on May19, 2020, inter alia, to subject Berkley, Jefferson, Harrison, Monongalia and Marion counties to the "high-alert" status.

53.     In Executive Order 39-20, a true and correct copy of which is attached hereto as Exhibit 23, on May 19, 2020, Governor Justice ordered, effective at 12:01 a.m. on May 21, 2020, inter alia, allowing re-opening of business under Week 4 phase.

54.     In Executive Order 40-20, a true and correct copy of which is attached hereto as Exhibit 24, on May 22, 2020, Governor Justice ordered, effective at 12:01 a.m. on May 26, 2020, inter alia, allowing re-opening of state park cabins/lodges to in-state residents, indoor bars at 50% capacity, and museums and visitor centers.

55.     In Executive Order 41-20, a true and correct copy of which is attached hereto as Exhibit 25, on May 29, 2020, Governor Justice ordered, effective at 12:01 a.m. on May 30, 2020, inter alia, allowing re-opening of spas/massage businesses, pools, indoor amusement, and limited video lottery retailers.

56.     In Executive Order 42-20, a true and correct copy of which is attached hereto as Exhibit 26, on June 4, 2020, Governor Justice ordered, effective at 12:01 a.m. on June 5, 2020, inter alia, allowing reopening of theaters and casinos.

57.     In Executive Order 43-20, a true and correct copy of which is attached hereto as Exhibit 27, on June 5, 2020, Governor Justice ordered, effective at 12:01 a.m. on June 8, 2020, inter alia, allowing activities including low-contact outdoor youth sports, WVSSAC-sanctioned athletics and band summer training programs, little league sports practices, and the reopening of all remaining adult sports facilities.

58.     In Executive Order 44-20, a true and correct copy of which is attached hereto as Exhibit 28, on June 8, 2020, Governor Justice ordered, effective at 12:01 a.m. on June 10, 2020, inter alia, allowing re-opening of private and state park campgrounds, cabins, and lodges to out-of-state guests provided stays do not exceed 7 days.

59.     In Executive Order 45-20, a true and correct copy of which is attached hereto as Exhibit 29, on June 19, 2020, Governor Justice ordered, effective at 12:01 a.m. on June 22, 2020, inter alia, regarding graduation ceremonies and racetracks.

60.     In Executive Order 49-20, a true and correct copy of which is attached hereto as Exhibit 30, on July 1, 2020, Governor Justice ordered, effective at 12:01 a.m. on July 1, 2020, inter alia, provisions of previous executive orders are amended and supplemented regarding fairs, festivals, amusement parks, and prohibited activities.

61.     In Executive Order 51-20, a true and correct copy of which is attached hereto as Exhibit 31, on July 13, 2020, Governor Justice ordered, effective at 12:01 a.m. on July 14, 2020, inter alia, that limited social gatherings to 25 and regarding fairs/festivals.

62.     In Executive Order 52-20, a true and correct copy of which is attached hereto as Exhibit 32, on July 13, 2020, Governor Justice ordered, effective at 12:01 a.m. on July 14, 2020, inter alia, that

      a. no bar in Monongalia County allow on-premises consumption of food and/or drink

      b. no bar in Monongalia County may allow use of the bar for service to patrons; and,

      c. that said limitations would be effective for 10 days or through July 24 2020.

or 10 days, or until July 24, 2020.

63.     In Executive Order 55-20, a true and correct copy of which is attached hereto, as Exhibit 33, Governor Justice ordered on July 23, 2020, that the limitations in Executive Order 52-20 would continue through, August 3, 2020.

64.     In Executive Order 58-20, a true and correct copy of which is attached hereto, as Exhibit 34, Governor Justice ordered on August 1, 2020, that the limitations in Executive Order 55-20 would continue through, August 13, 2020.

65.     In Executive Order 60-20, a true and correct copy of which is attached hereto as Exhibit 35, on August 12, 2020, Governor Justice ordered, effective until 12:01 a.m. on August 20, 2020, inter alia, that the limitations in Executive Order 58-20 would continue through, August 20, 2020.

66.     In Executive Order 62-20, a true and correct copy of which is attached hereto as Exhibit 36, on August 19, 2020, Governor Justice ordered, effective immediately until 12:01 a.m. on August 31, 2020, 2020, inter alia, that the limitations in Executive Order 60-20 would continue through, August 31, 2020.

67.     In Executive Order 65-20, a true and correct copy of which is attached hereto as Exhibit 37, on September 2, 2020, Governor Justice ordered, effective 4:00 p.m. on September 2, 2020, and continuing indefinitely, the terms of Executive Order 65-20 as said order pertains to bars in Monongalia County.

## V.     PROCEDURAL DUE PROCESS

68.     The allegations of all prior paragraphs one (1) through sixty-seven (67) are incorporated herein by reference as if more fully set forth herein.

69.     The imposition of limits on the size of public gatherings without regard to whether such events would occur indoors or outdoors, and the limitation on public gatherings indoors by Executive Order has affected the Plaintiffs and each of the Plaintiffs without any opportunity for any pre-imposition or post-imposition process to contest the entry of said Executive Orders or the application of the Executive Orders to the Plaintiffs and each of them.

The inability to contest the entry of the Executive Orders and the inability to contest the application of the Executive Orders has substantially limited the procedural due process rights of the Plaintiffs and each of them and has led to a significant diminution in the ongoing value of the business of the Plaintiffs.

70.     The imposition of specific limits on the size of public gatherings which might occur indoors without regard to the amount of square feet of indoor space available for such gatherings by Executive Order, without any opportunity for any pre-imposition or post-imposition  process to contest the entry of the Executive Orders or the application of the Executive Orders to the Plaintiffs and each of them has substantially limited the procedural due process rights of the Plaintiffs and each of them and has led to a significant diminution in the ongoing value of the business of the Plaintiffs.

71.     The imposition of specific limits on the operation of bars and restaurants in Monongalia County, in distinction to the operation of other businesses and other activities in Monongalia County, and outside Monongalia County, by Executive Order,  without any opportunity for any pre-imposition or post-imposition  process to contest the entry of the Executive Orders or the application of the Executive Orders to the Plaintiffs and each of them has substantially limited the procedural due process rights of the Plaintiffs and has led to a significant diminution in the ongoing value of the business of the Plaintiffs.

72.     Said Executive Orders, individually, and in combination, are not in the public interest and are not reasonably necessary to carry out any public purpose and said Executive Orders impose an undue burden on the Plaintiffs, and each of them, in violation of the United States Constitution.

73.     The Executive Orders, individually, and in combination, lack any process for administrative review, do not provide for any right to review by a neutral and detached official, do not provide for a hearing, do not include the right to have counsel assist in any such review, and do not allow for cross-examination of witness and further do not provide for prompt review and contain no requirement for reasoned decision-making, all of which are core elements of the right to due process.

## VI.     VIOLATION OF ARTICLE IV, SECTION 4 OF THE CONSTITUTION OF THE UNITED STATES

74.     The allegations of all prior paragraphs one (1) through seventy-three (73) are incorporated herein by reference as if more fully set forth herein.

75.     Article IV, Section 4 of the Constitution of the United States guarantees to every State a republican form of government. This guarantee includes the application of the Rule of Law, the separation of powers and guarantee of fundamental rights to the people.

76.     As set forth herein, W.Va. Code § 15-5-6, and the Executive Orders referred to herein which were promulgated by the Governor were entered in violation of Article IV, section 4 of the Constitution of the United States, in that said statute and said Executive Orders were entered in disregard of the principles of separation of powers, and in disregard of the Rule of Law.

## VII.     BREACH OF THE SEPARATION OF POWERS PROVISIONS OF THE WEST VIRGINIA CONSTITUTION

77.     The allegations of all prior paragraphs one (1) through seventy-six (76) are incorporated herein by reference as if more fully set forth herein.

78.     To the extent that W.Va. Code § 15-5-6 authorizes entry of Executive Orders without any temporal limitation, and without further Legislative authorization such statute is

beyond the power of the Legislature to delegate its Legislative Authority to the Governor of the State of West Virginia. As such, said statute is a breach of Article V, Section 1 of the West Virginia Constitution. That provision of the Constitution requires the separation of powers between the branches of the State Government.

79.     Said statute is further a breach of Article VI, § 1 of the West Virginia Constitution which limits the Legislative power of the State of West Virginia to the Legislature branch. Said statute is further a breach of Article VII, § 5 of the West Virginia Constitution which limits the authority of the Governor to exercise the Executive Power of the State of West Virginia. See Youngstown Sheet Tube Co v. Sawyer, 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952) (holding that President lacked authority to seize steel mills without an Act of Congress)

## VIII.    SUBSTANTIVE DUE PROCESS

80.     The allegations of all prior paragraphs one (1) through seventy-nine (79) are incorporated herein by reference as if more fully set forth herein.

81.     The Constitution of the United States, specifically the provisions of Amendment V, and Amendment XIV, guarantee the Plaintiffs, and each of them substantive due process.

82.     The imposition of limits on the size of public gatherings without regard to whether such events would occur indoors or outdoors, and the limitation on public gatherings indoors by Executive Order has affected the Plaintiffs and each of the Plaintiffs without any opportunity for any pre-imposition or post-imposition process to contest the entry of said Executive Orders or the application of the Executive Orders to the Plaintiffs and each of them. The inability to contest the entry of the Executive Orders and the inability to contest the application of the Executive Orders has substantially limited the procedural due process rights of

the Plaintiffs and each of them and has led to a significant diminution in the ongoing value of the business of the Plaintiffs.

83.     The imposition of specific limits on the size of public gatherings which might occur indoors without regard to the amount of square feet of indoor space available for such gatherings by Executive Order has substantially limited the substantive due process rights of the Plaintiffs and each of them, and has led to a significant diminution in the ongoing value of the business of the Plaintiffs, and each of them.

84.     The imposition of specific limits on the operation of bars and restaurants in Monongalia County, by Executive Order, has substantially limited the substantive due process rights of the Plaintiffs, and each of them, and has led to a significant diminution in the ongoing value of the business of the Plaintiffs, and each of them.

85.     Said Executive Orders, individually, and in combination, are not in the public interest and are not reasonably necessary to carry out any public purpose and said Executive Orders impose an undue burden on the Plaintiffs, and each of them, in violation of the United States Constitution.

## IX.     TAKING WITHOUT JUST COMPENSATION

86.     The allegations of all prior paragraphs one (1) through eighty-five (85) are incorporated herein by reference as if more fully set forth herein.

87.     The Constitution of the United States, specifically the provisions of Amendment V, and Amendment XIV, guarantee the Plaintiffs, and each of them, are guaranteed that private property will not be taken without just compensation being paid.

88.     The imposition of limits on the size of public gatherings without regard to whether such events would occur indoors or outdoors, and the limitation on public gatherings

indoors by Executive Order has affected the Plaintiffs, and each of the Plaintiffs, and has constituted the taking of their property, used to generate adequate income to discharge the obligations of the Plaintiffs, and each of them, without any just compensation.

89.    The imposition of specific limits on the size of public gatherings which might occur indoors without regard to the amount of square feet of indoor space available for such gatherings by Executive Order has affected the Plaintiffs, and each of the Plaintiffs, and has constituted the taking of their property, used to generate adequate income to discharge the obligations of the Plaintiffs, and each of them without any just compensation.

90.    The imposition of specific limits on the operation of bars and restaurants in Monongalia County, by Executive Order,  has affected the Plaintiffs, and each of the Plaintiffs, and has constituted the taking of their property, used to generate adequate income to discharge the obligations of the Plaintiffs, and each of them,  without any just compensation.

91.    Said Executive Orders, individually, and in combination, are not in the public interest and are not reasonably necessary to carry out any public purpose and said Executive Orders have constituted the taking of their property, used to generate adequate income to discharge the obligations of the Plaintiffs, and each of them, without any just compensation in violation of the United States Constitution.

X.    **EQUAL PROTECTION**

92.    The allegations of all prior paragraphs one (1) through ninety-one (91) are incorporated herein by reference as if more fully set forth herein.

93.    The imposition of specific limits on the operation of bars and restaurants in Monongalia County, in distinction to the operation of other businesses and other activities in Monongalia County, and outside Monongalia County, by Executive Order, denies the Plaintiffs,

and each of them, Equal Protection under the XIV Amendment to the United State Constitution, such interference with the right to Equal Protection of the Plaintiffs has led to a significant diminution in the ongoing value of the business of the Plaintiffs, and each of them..

94.     Said Executive Orders, individually, and in combination, are not in the public interest and are not reasonably necessary to carry out any public purpose and said Executive Orders impose an undue burden on the Plaintiffs, and each of them, in violation of the United States Constitution.

## XI.     COMMISSIONER OF ALCOHOL BEVERAGE CONTROL ADMINISTRATION

95.     The allegations of all prior paragraphs one (1) through ninety-four (94) are incorporated herein by reference as if more fully set forth herein.

96.     In reliance on the aforesaid Executive Orders of the Governor, which are unconstitutional, and in adopting policies to enforce said unconstitutional Executive Orders, Frederic L. Wooton, the Commissioner of the Alcohol Beverage Control Administration has promulgated and attempted to enforce regulations made applicable to the Plaintiffs, and each of them, who are holders of valid licenses issued by the Alcohol Beverage Control Administration which have been promulgated in violation of law, and which purport to regulate facets of the businesses of the Plaintiffs, and each of them, that have nothing to do with the regulation of alcohol distribution, including but not limited to the following rules and practices;

a.   purportedly limiting the number of persons who may be present at the premises of a licensee;

b.   purportedly limiting the service of beverages to persons within the premises of a licensee,

c.   purportedly limiting the food that may be served to persons within the premises of

a licenses;

d.   purportedly prohibiting the entertainment activities, including playing pool,

and/or cornhole, by persons within the premises of a licensee; and

e.    maintaining records of alleged violations of such unconstitutional regulations

(attached hereto as Exhibit 38).

97.     The activities of the Commissioner of the Alcohol Beverage Control
Administration render the Commissioner of the Alcohol Beverage Control Administration liable
to the Plaintiffs, and each of them, for violations of Amendment V, Amendment XIV, the
Guarantees of a Republican form of Government, and the violations of the law of West Virginia
as alleged with respect to the Governor.

**XII.     THE CITY OF MORGANTOWN**

98.     The allegations of all prior paragraphs one (1) through ninety-seven (97) are
incorporated herein by reference as if more fully set forth herein.

99.     The City of Morgantown has adopted ordinances, specifically Emergency
Ordinances 2020-1, 2020-2, 2020-3, 2020-4 and 2020-5, which purports to address a public
health emergency, and independently purports to authorize the City Manager of the City of
Morgantown to take such action as he, and he alone may decide is necessary to protect public
health, including but not limited to limiting the number of persons who may be present in an
individual business location within the City of Morgantown.

100.     In doing so, the City of Morgantown has joined with the Governor of the State of
West Virginia, and the Commissioner of the Alcohol Beverage Control Administration to limit
the rights of the Plaintiffs who operate bars and/or restaurants in Morgantown, and each of said

Plaintiffs to deprive them of have their property lawfully in use to generate adequate income to discharge the obligations of the Plaintiffs, and each of them, without any just compensation in violation of the United States Constitution.

101.    To the extent Emergency Ordinances 2020-5 attached hereto as Exhibit 39 and other ordinances referred to therein attempt to impose criminal sanctions for conduct that is in violation of directives of the City Manager, said ordinances fail to give notice of the conduct which is prohibited and are void for vagueness. City of Chicago v. Morales, 527 U.S. 41 (1999); and, Johnson v. United States, 135 S.Ct. 2551 (2015).

**XIII.    REVERSE CONDEMNATION**

102.    The allegations of all prior paragraphs one (1) through one hundred and one (101) are incorporated herein by reference as if more fully set forth herein.

103.    The provisions of W.Va. Code § 15-5-6(c)(3) provide for the procuring of materials and facilities during a State of Emergency or during a State of Emergency. The terms materials and facilities are not otherwise defined in W.Va. Code § 15-5-2, and therefore appear to have their ordinary meaning.

104.    The provisions of W.Va. Code § 15-5-6(c)(3) further provide that during a State of Preparedness or during a State of Emergency materials or facilities may be procured by purchase, condemnation pursuant to W.Va. Code § 54 -1-1, et seq., and by seizure pending institution of condemnation proceedings within 30 days from the date of seizure.

105.    Amendment V of the Constitution of the United States prohibits the taking of private property without due process of law, and further prohibits the taking of private property for public use without just compensation, and those principles have been made applicable to the States, including West Virginia, by the due process clause of Amendment XIV of the

Constitution of the United States. Furthermore, West Virginia law recognizes that eminent domain is a proper remedy for property that has been taken, or damaged for public use. See West Virginia Constitution, Art. III, § 9; and W.Va. Code § 54-1-2.

106.     West Virginia law recognizes that eminent domain is a proper remedy when property is taken or damaged in pursuit of a public purpose.

107.     In all of the Executive Orders referred to in this Complaint, Governor James Justice identified as a public purpose the protection of "public health."

108.     In West Virginia Lottery v. A-1- Amusement, Inc., 807 S.E. 2d 760 (2017) the West Virginia Supreme Court of Appeals of West Virginia observed, inter alia, that a claim for what has become known as "reverse condemnation," and more specifically an action in mandamus to require a body politic to initiate condemnation proceedings, could be based on the taking of personal property.

109.     This is an action for a writ of mandamus as authorized by West Virginia Code § 53-1-1, et seq., and by the All Writs Act, 28 U.S.C. § 1651 to require the Defendants, and each of them and  specifically including the Governor James Justice, Frederic L. Wooton, the Commissioner of the Alcohol Beverage Control Administration and the City of Morgantown to promptly initiate a condemnation proceeding or condemnation proceedings, in accordance with W.Va. Code § 54-1-1, et seq., to compensate the Plaintiffs, and each of them, for the taking of property as alleged throughout this Complaint.

## XIV.     CONCLUSION

**WHEREFORE**, the plaintiffs,  AJE Enterprise LLC d/b/a Whisper Night Club and Lounge, Adam Ereditario, BITS LLC d/b/a Fat Daddy's, Briana Weisen, DRD2 LLC d/b/a Almost Heaven Bar & Grill, Danielle Dufalla Baby Squirrels, LLC Baby Squirrels Saloon Travis

Tracy, B.F. Ugly's d/b/a Big Times, Zach Traugh, Caribba Foods, LLC d/b/a/Crab Shack

Caribba and Dockside Grille, Bron Kayal, Cecelia's d/b/a Joe Mama's, Joe Blodgett Extensive

Enterprises, Kenneth Dufalla, Mountain Mamas Hot Spot LLC Mountain Mamas Tavern LLC ,

Megan and Jacob Samples, SAR Tech LLC and SHC LLC, Steve Reese, The Annex, Chris Hare,

and Ray G 4th and Goal d/b/a 4th & Goal, Ray G Scorers d/b/a Scorers, Ray Glymph

respectfully demand judgment again defendants Governor of West Virginia, Frederic L. Wooton,

in his capacity as the West Virginia Alcohol Beverage Control Administration Commissioner,

and Emily Muzzarelli, as her capacity as the Interim City Manager of Morgantown, for

compensatory damages in excess of the jurisdictional threshold of the Court in a sum to make the

plaintiffs' whole for their injuries and losses; for attorney's fees, costs, and pre- and post-

judgment interest where allowable by law, and for such additional favorable relief including

initiation of Reverse Condemnation proceeding as the Court deems just and appropriate.

*/s/ Martin P. Sheehan*
MARTIN P. SHEEHAN, ESQ. (#4812)
Sheehan & Associates
1 Community Street, Suite 200
Wheeling, WV 26003
(304) 232-1064 – Phone
(304) 232-1066 - Facsimile
*Of Counsel for Plaintiffs*

**Verification**

I, Martin P. Sheehan, verify that each of the allegations contained in the foregoing

Complaint are true and correct, or are on information and belief, true and correct. .

_____

Martin P. Sheehan

Sworn to and subscribed before me this 21st day of September, 2020

_____
Notary Public

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
MOLLY A. SOVICH
Sheehan & Associates, PLLC
1 Community Street., Ste. 200
Wheeling, West Virginia 26003
My Commission Expires Oct. 18, 2022