## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### Clarksburg

**AJE ENTERPRISE LLC** d/b/a **WHISPER
NIGHT CLUB AND LOUNGE; ADAM
EREDITARIO; BITS LLC** d/b/a **FAT DADDY'S;
BRIANA WEISEN; DRD2 LLC** d/b/a **ALMOST
HEAVEN BAR & GRILL; DANIELLE DUFALLA;
BABY SQUIRRELS, LLC;** d/b/a **BABY
SQUIRRELS SALOON; TRAVIS TRACY;
B.F. UGLY'S** d/b/a **BIG TIMES; ALIAS
ENTERPRISES, LLC** d/b/a **CODE;
ZACH TRAUGH; CARIBBA FOODS,
LLC** d/b/a **CRAB SHACK CARIBBA AND
DOCKSIDE GRILLE; BRON KAYAL;
CECELIA'S** d/b/a **JOE MAMA'S; JOE
BLODGETT; EXTENSIVE ENTERPRISES;
KENNETH DUFALLA; MOUNTAIN MAMAS
HOT SPOT LLC; MOUNTAIN MAMAS
TAVERN LLC; MEGAN SAMPLES;
JACOB SAMPLES; SAR TECH LLC;
SHC LLC; STEVE REESE; JL3 LLC**
d/b/a **THE ANNEX; CHRIS HARE; RAY G 4TH
AND GOAL** d/b/a **4TH & GOAL; RAY
G SCORERS** d/b/a **SCORERS; RAY
GLYMPH; NUT CLUB LLC** d/b/a **BLAZE;**
and **MAXWELL CUMMONS,**

Plaintiffs,

v.

**Civil Action No. 1:20-CV-229**
Judge John Preston Bailey

**JAMES JUSTICE**, in his capacity as
Governor of West Virginia; **FREDERIC
L. WOOTEN**, in his capacity as the West
Virginia Alcohol Beverage Control Administration
Commissioner; **THE CITY OF MORGANTOWN**;
and **A. KIM HAWS**, in her capacity as the
City Manager of Morgantown,

Defendants.

1

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

Pending before this Court is the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment of Defendants City of Morgantown and Emily Muzzarelli, Interim City Manager of Morgantown, West Virginia [Doc. 39][1] and Defendants Governor Justice and the West Virginia Alcohol Beverage Control Administrations Motion to Dismiss [Doc. 41], both filed December 1, 2020. The plaintiffs having filed no opposition or request for extension within the applicable time period, this case is ripe for decision.

In this civil action, the plaintiffs challenge any and all executive orders of James Justice, the Governor of West Virginia, all regulations issued by the West Virginia Alcohol Beverage Control Administration, and/or all ordinances adopted by the City of Morgantown which were issued in response to the COVID-19 pandemic. Essentially, the plaintiffs seek to erase the State's response to the pandemic and enjoin the Governor and the West Virginia Alcohol Beverage Control Administration from enforcing and implementing Executive Orders that limit the operation of bars and restaurants in Monongalia County. Plaintiffs also seek declaratory relief, compensatory damages, attorneys' fees, and costs.

## LEGAL STANDARD

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (applying the *Twombly* standard and emphasizing the necessity of *plausibility*). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the

_____

[1] Subsequent to the filing of this Motion, A. Kim Haws was substituted for Emily Muzzarelli [Doc. 45].

Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. *Edwards v. City of Goldsboro,* 178 F.3d 231, 243–44 (4th Cir. 1999).

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

In reviewing the supported underlying facts, all reasonable inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met

3

its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial.   Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25; *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).  Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).  "Permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." *Sylvia Dev. Corp. v. Calvert Cty., Md.*, 48 F.3d 810, 818 (4th Cir. 1995).  Further, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## DISCUSSION

As asserted by the plaintiffs, there can be no doubt that, separately and in combination, these orders have effectively closed or adversely affected the operations of most of the named plaintiffs in the City of Morgantown, and beyond the city limits but within Monongalia County.  The Governor has effectively closed the operations of the plaintiffs since July 13, 2020, except for September 1-4, 2020, when after reopening such

operations were again closed.

The plaintiffs base their challenge to the enactments on the theories that the enactments are (1) violations of the separation of powers; (2) violations of procedural due process; (3) an impairment of the "right to do business"; (4) violations of substantive due process; and (5) takings without just compensation.

In evaluating the constitutionality of these enactments, the starting point must be *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905), in which the United States Supreme Court held that a law involving public health emergencies will only be struck down if it has "no real or substantial relation to those objects, or is beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Jacobson*, 197 U.S. at 31.

The plaintiffs attempt to discount the vitality of *Jacobson* by citing to *Cnty. of Butler v. Wolf*, 2020 WL 5510690 (W.D. Pa. Sept. 14, 2020). However, the Third Circuit stayed the effect of that decision pending appeal. *Cnty. of Butler v. Gov. of Pa.*, 2020 WL 5868393 (3d Cir. Oct. 1, 2020). The plaintiffs also cite *League of Indep. Fitness Facilities and Trainers, Inc. v. Whitmer*, 468 F.Supp.3d 940 (W.D. Mich. 2020). However, the Sixth Circuit, in staying the district court order, stated:

> All agree that the police power retained by the states empowers state officials to address pandemics such as COVID-19 largely without interference from the courts. *Jacobson v. Massachusetts*, 197 U.S. 11, 29 (1905). This century-old historical principle has been reaffirmed just this year by a chorus of judicial voices, including our own. *See, e.g., Elim Romanian*

*Pentecostal Church v. Pritzker*, 2020 WL 2517093, at *1 (7th Cir. May 16, 2020); *Roberts v. Neace*, 958 F.3d 409, 414 (6th Cir. 2020); *In re Rutledge*, 956 F.3d 1018, 1031–32 (8th Cir. 2020); *In re Abbott*, 956 F.3d 696, 704–05 (5th Cir. 2020); *Geller v. de Blasio*, 2020 WL 2520711, at *3 (S.D.N.Y. May 18, 2020); *McGhee v. City of Flagstaff*, 2020 WL 2308479, at *3 (D. Ariz. May 8, 2020); *Givens v. Newsom*, 2020 WL 2307224, at *3 (E.D. Cal. May 8, 2020).  The police power, however, is not absolute. "While the law may take periodic naps during a pandemic, we will not let it sleep through one." *Maryville Baptist Church*, 957 F.3d at 615.

The parties agree that rational basis review is the hurdle the Governor's Order must clear.  Utilizing that legal framework, we presume the Order is constitutional, making it incumbent upon [p]laintiffs to negate "every conceivable basis which might support" it.  *Armour v. City of Indianapolis*, 566 U.S. 673, 681 (2012).  That is no easy task.  Plaintiffs must disprove all possible justifications for the Order regardless whether those justifications actually motivated the Governor's decisionmaking.   *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–15 (1993) ("[B]ecause we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.  Thus, the absence of 'legislative facts' explaining the distinction 'on the record' has no significance in rational-basis analysis.") (citations omitted).  Under this test,

6

the Governor's action "is not subject to courtroom fact-finding and may be
based on rational speculation unsupported by evidence or empirical data."
*Id*. at 315. Especially so, we note, in the case of a public health crisis like
the one presented by COVID-19, where "[Michigan's] latitude must be
especially broad." *South Bay United Pentecostal Church v. Newsom*, ——
U.S. ——, 140 S. Ct. 1613, 1613 (2020) (Mem.) (Roberts, C.J., concurring
in the denial of injunctive relief) (citing *Marshall v. United States*, 414 U.S.
417, 427 (1974)).

*League of Indep. Fitness Facilities and Trainers, Inc.*, 814 Fed.Appx. 125, 127–28 (6th
Cir. 2020).

The vast majority of courts have looked to *Jacobson* in their analysis of various
pandemic responses. In *Illinois Republican Party v. Pritzker*, 973 F.3d 760 (7th Cir.
2020), the Seventh Circuit, in a case challenging orders limiting the size of public
gatherings, stated that "[t]he district court appropriately looked to *Jacobson* for guidance,
and so do we." *See also Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341
(7th Cir. 2020).

The Eighth Circuit, in *In re: Rutledge*, 956 F.3d 1018, 1028 (8th Cir. 2020), held
that "the district court's failure to apply the *Jacobson* framework produced a patently
erroneous result. As discussed, *Jacobson* provides that a court may review a
constitutional challenge to a government's response to a public health crisis only if the
state's response lacks a 'real or substantial relation' to the public health crisis or it is,
'beyond all question, a plain, palpable invasion' of the right to abortion. 197 U.S. at 31."

Likewise, in *In re: Abbott*, 954 F.3d 772, 778 (5th Cir. 2020), the Fifth Circuit issued a writ of mandamus directing vacatur of a TRO, stating "the district court ignored the framework governing emergency public health measures . . . . *See Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11."

While this Court is not aware of any Fourth Circuit case addressing the continued effect of *Jacobson*, district courts within the Circuit have.[2] In *Berean Baptist Church v. Cooper*, 2020 WL 2514313, at \*6 (E.D. N.C. May 16, 2020), Judge James Dever held that "[a]lthough 115 years old, *Jacobson* remains the lodestar in striking the balance between constitutional rights and public safety. *See In re Abbott*, 954 F.3d 772, 783 (5th Cir. 2020); *Roberts v. Neace*, 958 F.3d 409, 414 (6th Cir. May 9, 2020); *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, ——, 2020 WL 2111316, at \*4 (6th Cir. May 2, 2020); see also *Kansas v. Hendricks*, 521 U.S. 346, 356–57 (1997)."

In *Antietam Battlefield KOA v. Hogan*, 2020 WL 2556496, at \*5 (D. Md. May 22, 2020), Judge Catherine Blake noted that "[s]ince the challenged orders are public health measures to address a disease outbreak, *Jacobson* provides the proper scope of review. Therefore, the plaintiffs must demonstrate that they are likely to succeed in showing that the Governor's orders have either no 'real or substantial relation' to protecting public health or that they are 'beyond all question, a plain, palpable invasion of rights secured by the fundamental law.'"

---

[2] Although not in the context of the current pandemic, the Fourth Circuit followed the reasoning of *Jacobson* in *Workman v. Mingo Cty. Bd. of Educ.*, 419 Fed.Appx. 348, 353 (4th Cir. 2011).

In *Tigges v. Northam*, 2020 WL 4197610, at *7 (E.D. Va. July 21, 2020), Judge John Gibney held that "[a]ny constitutional challenge to state action taken in response to a public health crisis begins with the Supreme Court's decision in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905). In *Jacobson*, the Court explained that 'a community has the right to protect itself against an epidemic of disease which threatens the safety of its member.' *Id*. at 27. Accordingly, 'when faced with a society-threatening epidemic, a state may implement emergency measures that curtail constitutional rights so long as the measures have at least some "real or substantial relation" to the public health crisis and are not "beyond all question, a plain, palpable invasion of rights secured by the fundamental law."' *In re Abbott*, 954 F.3d 772, 785 (2020) (quoting *Jacobson*, 197 U.S. at 31). Federal courts, of course, lack the 'authority to determine the most effective measures for protecting the public—that "judgment must be left to the governing state authorities."' *SH3 Health Consulting*, 459 F.Supp.3d at ——, 2020 WL 2308444, at *6 (quoting *In re Abbott*, 954 F.3d at 784)."

In *Page v. Cuomo*, 2020 WL 4589329, at *7 (N.D. N.Y. Aug. 11, 2020), the Court discussed that "a review of the current landscape confirms that [*Jacobson* detractors] are solidly in the minority. Courts faced with constitutional challenges to quarantine orders have continued to rely on *Jacobson*, even before the current coronavirus pandemic. *See, e.g., Hickox v. Christie*, 205 F. Supp. 3d 579, 591 (D. N.J. 2016) (evaluating constitutional challenge to federal quarantine order asserted by a plaintiff returning to U.S. after treating Ebola patients abroad)."

The *Page* Court added:

As relevant here, courts across the country have nearly uniformly relied on *Jacobson's* framework to analyze emergency public health measures put in place to curb the spread of coronavirus. *See, e.g., In re Abbott*, 954 F.3d 772, 785 (5th Cir. 2020) (faulting district court for "ignor[ing] the framework governing emergency public health measures" set forth in *Jacobson*); *In re Rutledge*, 956 F.3d 1018, 1028 (8th Cir. 2020) ("[T]he district court's failure to apply the *Jacobson* framework produced a patently erroneous result."); *Carmichael v. Ige*, 2020 WL 3630738, at *5 n.6 (D. Haw. July 2, 2020) (rejecting assertion that *Jacobson* is inapplicable to plaintiffs' challenge to quarantine requirement); *Ass'n of Jewish Camp Operators v. Cuomo*, —— F. Supp. 3d ——, ——, 2020 WL 3766496, at *8 (N.D. N.Y. July 6, 2020) (Suddaby, J.) ("[T]he Court joins the many courts throughout the country that rely on *Jacobson* when determining if a governor's executive order has improperly curtailed an individual's constitutional right during the COVID–19 pandemic."); *McCarthy v. Cuomo*, 2020 WL 3286530, at *3 (E.D. N.Y. June 18, 2020) (applying *Jacobson* to reject challenge to several State Executive Orders related to the pandemic); *Geller v. De Blasio*, —— F. Supp. 3d ——, ——, 2020 WL 2520711, at *3 (S.D.N.Y. May 18, 2020) (applying intermediate scrutiny "through th[e] lens" of *Jacobson* to reject a First Amendment challenge to New York City's order restriction (sic) non-essential gatherings).

*Page*, 2020 WL 4589329, at *8.

Albeit not a binding precedent, no less an authority than the Chief Justice of the United States has thrown his support behind the continued vitality of *Jacobson's* deferential framework in the midst of this unfolding public health crisis. *S. Bay United Pentecostal Church v. Newsom*, —— U.S. ——, 140 S. Ct. 1613, 1614 (2020) (mem.) (Roberts, C.J., concurring) (opining that politically accountable officials are deserving of especially broad latitude in areas of medical and scientific uncertainty).

"According to *Jacobson*, the liberties secured by the Constitution do 'not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint. There are manifold restraints to which every person is necessarily subject for the common good.' *Jacobson*, 197 U.S. at 26. It is a 'fundamental principle that persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the state.' *Id*. (citation and internal quotations marks omitted). When an epidemic of disease threatens the safety of a community's members, it 'has the right to protect itself.' *Id*. at 27. And commensurate with that right is a state's authority 'to enact quarantine laws and health laws of every description.' *Id*. at 25 (internal quotations marks omitted)." *Carmichael v. Ige*, 2020 WL 3630738, at *5 (D. Hawai'i July 2, 2020).

"Defendant's Emergency Proclamations—purporting to protect public health during the COVID-19 pandemic—are not susceptible to [p]laintiffs' constitutional challenges unless they have 'no real or substantial relation to' the crisis or are 'beyond all question, a plain, palpable invasion of rights secured by the fundamental law.' *Jacobson*, 197 U.S. at 31 (citations omitted). Indeed, '*Jacobson* instructs that all constitutional rights may be

reasonably restricted to combat a public health emergency.' *In re Abbott*, 954 F.3d 772, 786 (5th Cir. 2020). And 'the judiciary may not "second-guess the state's policy choices in crafting emergency public health measures."' *In re Rutledge*, 956 F.3d 1018, 1029 (8th Cir. 2020) (quoting *Abbott*, 954 F.3d at 784)." *Carmichael*, 2020 WL 3630738, at *5.

Based upon the teachings of *Jacobson*, this Court will apply the rational basis standard in evaluating the orders in question.

This Court is aware that Justice Gorsuch, writing for himself, criticized *Jacobson*, stating:

Although *Jacobson* pre-dated the modern tiers of scrutiny, this Court essentially applied rational basis review to Henning Jacobson's challenge to a state law that, in light of an ongoing smallpox pandemic, required individuals to take a vaccine, pay a $5 fine, or establish that they qualified for an exemption. *Id.*, at 25 (asking whether the State's scheme was "reasonable"); *id.*, at 27 (same); *id.*, at 28 (same). Rational basis review is the test this Court normally applies to Fourteenth Amendment challenges, so long as they do not involve suspect classifications based on race or some other ground, or a claim of fundamental right. Put differently, *Jacobson* didn't seek to depart from normal legal rules during a pandemic, and it supplies no precedent for doing so. Instead, *Jacobson* applied what would become the traditional legal test associated with the right at issue—exactly what the Court does today. Here, that means strict scrutiny: The First Amendment traditionally requires a State to treat religious exercises at least

12

as well as comparable secular activities unless it can meet the demands of strict scrutiny—showing it has employed the most narrowly tailored means available to satisfy a compelling state interest. *Church of the Lukumi Bablu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546, 113 S.Ct. 2217. *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 70 (2020).

As this Court noted in denying the request for a preliminary injunction, were *Jacobson* not the controlling precedent, this Court would be compelled to continue to apply the rational basis standard. The interests which the plaintiffs seek to protect are strictly economic interests. If the rules or enactments neither infringe a fundamental right nor disadvantage a suspect class, courts apply the rational basis test. *Talleywhacker, Inc. v. Cooper*, 2020 WL 3051207, at *8 (E.D. N.C. June 6, 2020). "Plaintiffs, as commercial business owners, do not belong to a suspect or quasi-suspect class." *Id*. at *9.

"Moreover, the regulation of business operations does not 'impinge on fundamental rights.' *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 426 & n.5 (2010); *see, e.g.*, *N. Dakota State Bd. of Pharmacy v. Snyder's Drug Stores, Inc.*, 414 U.S. 156, 167 (1973) ('[W]e emphatically refuse to go back to the time when courts used the Due Process Clause "to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought."')." *Id*.

"When economic legislation does not employ classifications subject to heightened scrutiny or impinge on fundamental rights, courts generally view constitutional challenges

13

with the skepticism due to respect for legislative choices demands." *World Gym, Inc. v. Baker*, 2020 WL 4274557, *3 (D. Mass. July 24, 2020) (quoting *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 426 (2010)).

"[C]ourts reviewing business closures due to COVID-19 have consistently applied rational basis review. *See Xponential Fitness v. Arizona*, 2020 WL 3971908, at *7 (D. Ariz. July 14, 2020); *League of Indep. Fitness Facilities & Trainers, Inc.*, —— Fed.Appx. at ——, 2020 WL 3468281, at *2; *McCarthy v. Cuomo*, 2020 WL 3286530, at *6 (E.D. N.Y. June 18, 2020)." *World Gym, Inc.*, 2020 WL 4274557, at *3.

The first cause of action asserted by plaintiffs is that the Governor is acting in a legislative capacity thereby violating the separation of powers as provided in the West Virginia Constitution.  Plaintiffs' claims under the West Virginia Constitution fail, since the Eleventh Amendment prohibits federal courts from granting injunctive relief against state officials on the basis of state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984); *Talleywhacker, Inc.*, 2020 WL 3051207, at *12; *World Gym, Inc.*, 2020 WL 4274557, at *3; *Tigges v. Northam*, 2020 WL 4197610, at *5 (E.D. Va. July 21, 2020).

The next ground relied upon by plaintiffs is that the enactments violate their procedural due process rights.  In order to prevail on procedural due process grounds, the plaintiffs must "identify a constitutionally cognizable life, liberty, or property interest. *See Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013) ('To succeed on a procedural due process claim, a plaintiff must . . . demonstrate that he had a constitutionally cognizable life, liberty, or property interest . . .'); *Siena Corp. v. Mayor & City Council of Rockville Maryland*, 873 F.3d 456, 461 (4th Cir. 2017) ('To succeed on

[the substantive due process claim], Siena must establish (1) that it possessed a cognizable property interest, rooted in state law[.]').  Although plaintiffs claim to have a fundamental property interest 'in conducting lawful business activities[,]' . . . the assertion of a 'general right to do business' has not been recognized as a constitutionally protected right.  *See Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) ('The assets of a business (including its good will) unquestionably are property, and any state taking of those assets is unquestionably a "deprivation" under the Fourteenth Amendment.  But business in the sense of the activity of doing business, or the activity of making a profit is not property in the ordinary sense.'); *see also In re Premier Auto. Serv., Inc.*, 492 F.3d 274, 283 (4th Cir. 2007) ('The recognition of such a broad "right to do business" would be akin to that recognized in *Lochner v. New York*, 198 U.S. 45 (1905), and its progeny, which the Supreme Court has long since refused to recognize.')." *Talleywhacker*, 2020 WL 3051207, at *12.

"[P]olice power is routinely exercised in this Country without first conducting public or private hearings, and without offending the Constitution." *Bayley's Campground v. Mills*, 2020 WL 2791797, at *11 (D. Maine May 29, 2020).

"While due process 'normally requires notice and opportunity for "some kind of hearing" prior to a final deprivation of liberty or property . . . [t]his generalization is a very loose one.' *Herwins v. City of Revere*, 163 F.3d 15, 18 (1st Cir. 1998) (internal citations omitted).  The Supreme Court has explained that 'summary administrative action may be justified in emergency situations,' *Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 299-300 (1981), 'and the reason is not hard to grasp.' *S. Commons*

15

*Condo. Ass'n v. Charlie Arment Trucking, Inc.*, 775 F.3d 82, 86 (1st Cir. 2014). 'By their nature, emergency situations require an immediate response. And, in consequence of the necessity of quick action by the State, constitutional due process does not require the usual up-front procedural protections in dealing with emergencies.' *Id.* (internal citation and quotation marks omitted). As an initial matter, therefore, I find plaintiffs are not entitled to any sort of pre-deprivation process when it comes to a generalized police policy imposed during this type of public health emergency." *Savage v. Mills*, 2020 WL 4572314, at *7 (D. Maine Aug. 7, 2020).

"Furthermore, to state such a due process claim, [p]laintiffs must allege the defendant deprived them of a liberty or property interest without adequate process. *See, e.g., González-Droz v. González-Colón*, 660 F.3d 1, 13 (1st Cir. 2011); *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 56 (1st Cir. 2006). Plaintiffs allege their purported interest only in a conclusory fashion. They contend the Governor deprived them of a liberty and property because the Executive Orders allegedly cause the 'shuttering [of] their businesses.' . . . But, as discussed above, their businesses are presently allowed to operate, and, even if they were not, that alone would not constitute deprivation entitled to Due Process protections. *See Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) ('business in the sense of the activity of doing business, or the activity of making a profit is not property in the ordinary sense.')." *Savage*, 2020 WL 4572314, at *7.

"[T]he COVID-19 scenario is the kind of scenario for which emergency action would be expected. . . ." *Bayley's Campground Inc.*, 2020 WL 2791797, at *12. Here, the

Governor acted in response to that scenario, and so the initial closure without individual hearings does not offend due process. *Benner v. Wolf*, 2020 WL 2564920, at *4 (M.D. Pa. May 21, 2020) (holding that plaintiffs were not likely to succeed on their deprivation of due process argument and explaining that "individualized pre-deprivation process" would "render[] ineffective any public health measure meant to combat viral spread"); *see Hartman v. Acton*, 2020 WL 1932896, at *10 (S.D. Ohio Apr. 21, 2020) (Marbley, J).

As noted above, the "right to business" has not been recognized as a fundamental constitutional right. *See Coll. Sav. Bank*, 527 U.S. at 675; *Levin v. Comm. Energy, Inc.*, 560 U.S. 413, 426 n. 5 (2010); *N. Dakota State Bd. of Pharmacy v. Snyder's Drug Stores, Inc.*, 414 U.S. 156, 167 (1973) ("[W]e emphatically refuse to go back to the time when courts used the Due Process Clause 'to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought.'"); *Nat'l Ass'n for the Advancement of Multijurisdiction Practice v. Lynch*, 826 F.3d at 196.

Plaintiffs likewise fail on their substantive due process claim. To sustain a claim of substantive due process, "[e]ither a plaintiff must demonstrate the deprivation of a 'fundamental' interest protected by the Fourteenth Amendment or demonstrate conduct that 'shocks the conscience' (or both). *Sever v. City of Salem, Mass.*, 2020 WL 948413, at *1 (1st Cir. Feb. 14, 2020)." *Savage*, 2020 WL 4572314, at *8.

"The Supreme Court has long recognized that a state can avoid this close constitutional scrutiny of alleged violations of substantive due process during a public health crisis. *Jacobson v. Massachusetts*, 197 U.S. 11, 27 (1905) ('a community has the

right to protect itself against an epidemic of disease which threatens the safety of its members.'). While such an epidemic is ongoing the Supreme Court has applied a gentler analysis to substantive due process claims: that courts should only overturn state action when it lacks a 'real or substantial relation to the protection of the public health' or represents 'a plain, palpable invasion of rights secured by the fundamental law.' *Jacobson*, 197 U.S. at 31; *see also In re Abbott*, 954 F.3d 772, 784 (5th Cir. 2020) (applying *Jacobson* to a substantive due process claim during the COVID epidemic). Plaintiffs do not allege [d]efendant's executive orders are unrelated to protecting public health, and only assert a liberty interest in their ability to run their respective businesses. . . . Harm to business interests, however, is not a 'plain, palpable invasion of rights' under the Fourteenth Amendment. *See Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 721 (2010) (noting that 'the "liberties" protected by substantive due process do not include economic liberties')." *Savage*, 2020 WL 4572314, at *8 (footnotes omitted).

The next ground asserted by plaintiffs is the assertion of a takings claim–that is–the plaintiffs must be compensated for financial losses resulting from the closure orders and limitations on opening. To prevail on this claim, the plaintiffs must establish that the public health measures deny them all economically beneficial use of their property or that the regulation frustrates their investment-backed economic expectations without corresponding public benefit. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992) (regulatory taking occurs only when regulation denies all economically beneficial or productive use of land); *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104

(1978) (test evaluates three factors: (1) the economic effect of the regulation applicable to the property, (2) the property owner's reasonable investment-backed expectations for development, and (3) the character of the regulation).   The public health measures complained of, which allowed consumption of alcohol with food but limit dense gatherings at bar areas as well as consumption of alcohol without food–and which now simply provide occupancy restrictions at bars and restaurants to limit dense gatherings–not only allow beneficial use of plaintiffs' property but allow plaintiffs to continue substantially the same use as they have already made of their properties, albeit at lower capacity to allow patrons to gather at a reasonably safe distance.  The public health measures are also limited to the duration of the public health emergency caused by COVID-19 and do not permanently affect plaintiffs' property uses.   While the emergency public health orders may have impacted the revenues of plaintiffs' businesses, that impact is insufficient to establish a taking when considering the important public health protections provided by the regulation. *See TJM 64, Inc. v. Harris*,  2020 WL 4352756 (W.D. Tenn. July 29, 2020) (denying injunction against order closing bars and allowing businesses with 50% of revenue from food service to remain open).  As the *TJM 64, Inc.* opinion notes, the public health orders are exercises of the police power and do not constitute a taking for a public use.  *Id*. at *7. ("The Takings Clause does not render every government action a taking just because it has a detrimental effect on the owner's property; the text of the Takings Clause dictates that a regulatory action will only constitute a taking, and thus require just compensation, when the property is being taken for the 'public use.'  *See United States v. Droganes*, 728 F.3d 580, 591 (6th Cir. 2013) (noting that the state's seizure of property was an exercise

of its 'police power' and did 'not constitute a "public use"' (quoting *Innovair Aviation, Ltd. v. United States*, 632 F.3d 1336, 1341 (Fed. Cir. 2011)); *see also AmeriSource Corp. v. United States*, 525 F.3d 1149, 1152 (Fed. Cir. 2008) ("The [Takings] [C]lause does not entitle all aggrieved owners to recompense, only those whose property has been taken for a public use."); *Lech v. Jackson*, 791 F.App'x 711, 719 (10th Cir. 2019) (agreeing with the Federal Circuit that if a government's exercise of power to rid an individual of property is not pursuant to its power of eminent domain but some other police power, the Takings Clause is not implicated).

As noted in *Savage*, "they were unable to sell products and services for a time, but plaintiffs have not cited any authority stating that the inability to sell goods and services is a taking of their property.  They have failed to state a takings claim."  *Savage*, 2020 WL 4572314, at *9.

"[B]usiness in the sense of the activity of doing business, or the activity of making a profit is not property in the ordinary sense."  *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013); *see also In re Premier Auto. Serv., Inc.*, 492 F.3d 274, 283 (4th Cir. 2007).

Of equal importance, a "license to sell beer or operate a private club is not a property right but is a privilege granted by the State to an individual."  *See West Virginia Nonintoxicating Beer Com'r v. A & H Tavern*, 181 W.Va. 364, 382 S.E.2d 558 (1989). The Supreme Court of West Virginia has explained, "there is no inherent right in any individual to engage in business which the state, in exercise of police power, has placed under surveillance and permits only as privilege or franchise."  *See CDS, Inc. v. Camper*,

20

189 W.Va. 63, 428 S.E.2d 44 (1993). Because the opportunity to operate a private club or tavern is a privilege granted via license that may be revoked, it hardly amounts to a liberty or property interest. *See* W.Va. Code § 60-7-13; 175 CSR 2 §§ 6.1., 6.7.3.

Here, the only interest that plaintiffs contend that the Governor infringed upon was "their right to do business." But plaintiffs have no "right" to a license to operate a private club or tavern, and the "right to do business" has not been recognized as a constitutionally protected right. The plaintiffs have failed to produce any authority to the contrary. Their claims also ignore the grave nature of why the Governor issued a state of emergency and the specific authority vested in the executive during emergencies to "suspend or limit the sale, dispensing or transportation of alcoholic beverages." *See* W.Va. Code § 15-5-6 (c)(9).

Although not stated as a ground in plaintiffs' written motion, during the evidentiary hearing, counsel raised the issue of an equal protection claim. In this case, rational basis review applies to plaintiffs' equal protection claim. Under this standard, the law "is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." ***Smith Setzer & Sons, Inc. v. S.C. Procurement Review Panel***, 20 F.3d 1311, 1320 (4th Cir. 1994) (citing ***City of Cleburne v. Cleburne Living Ctr., Inc.***, 473 U.S. 432, 440 (1985)). Furthermore, "those attacking the rationality of the [law] have the burden to negative every conceivable basis which might support it." ***Nat'l Ass'n for the Advancement of Multijurisdictional Practice***, 826 F.3d at 196 (citing ***F.C.C. v. Beach Commc'ns***, 508 U.S. at 314–15 (1993)). "In other words, where there are plausible reasons for the rule, [the court's] inquiry is at an end." ***Id.***

21

(quoting *Beach Commc'ns*, 508 U.S. at 313–14).  While plaintiffs effectively point out similarities between their businesses and those allowed to reopen, "a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect."  *Giarratano v. Johnson*, 521 F.3d 298, 303 (4th Cir. 2008).  Indeed, "[i]f the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'"  *Id.* (quoting *Dandridge v. Williams*, 397 U.S. 471, 485 (1970)).

Plaintiffs cannot demonstrate they are likely to succeed on the merits as they are not entitled to any heightened scrutiny and the Governor's action is rationally related to a legitimate government interest.  When economic legislation does not employ classifications subject to heightened scrutiny, the test is whether the same is supported by a rational basis in furtherance of a legitimate government interest.  *See Dickerson v. Latessa*, 872 F.2d 1116, 1119 (1st Cir. 1989).  Here, as this Court explained above, plaintiffs have not identified any suspect classification that would entitle them to any heightened review under the equal protection clause.  Indeed, the courts reviewing business closures due to COVID-19 have consistently applied rational basis review.  *See Xponential Fitness v. Arizona*, 2020 WL 3971908, at *7 (D. Ariz. July 14, 2020); *League of Indep. Fitness Facilities & Trainers, Inc.*, 814 F.App'x at 128; *McCarthy v. Cuomo*, 2020 WL 3286530, at *6 (E.D. N.Y. June 18, 2020).

Defendants' interest in preventing the spread of COVID-19 and protecting the health and safety of the public is a substantial government interest.  By requiring the temporary

22

closure of businesses that present a higher risk of spreading COVID-19, the enactments materially advance this interest.   In the memorandum supporting Governor Justice's Motion, the authors note that the pandemic has already claimed the lives of 758 West Virginians and infected over 48,818.   During the brief period that the Motion has been pending, the numbers have grown to 1,442 deaths and 93,162 infections.

A law involving public health emergencies will only be struck down if it has "no real or substantial relation to those objects, or is beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Jacobson*, 197 U.S. at 31; *see also TJM 64, Inc.*, 2020 WL 4352756 at *3.   "All agree that the police power retained by the states empowers state officials to address pandemics such as COVID-19 largely without interference from the courts."   *See League of Indep. Fitness Facilities and Trainers, Inc.*, 814 F.App'x 125 (order granting stay) (citing *Jacobson*, 197 U.S. at 29); *see also Luke's Catering Service, LLC v. Cuomo*, 2020 WL 5415008 (W.D. N.Y. Sept. 10, 2020).

In times of emergency, the Governor, whoever he or she may be, must act swiftly to protect the interests of the people in our State.   It is difficult to imagine a context where swift and broad action is more important than responding to a public health crisis the likes of which the world hasn't seen in over a century.   Time is of the essence and lives are at stake.

Based upon all the foregoing, this Court finds that under the appropriate standard of review, the plaintiffs have failed to state a claim upon which relief may be granted. Accordingly, the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment of Defendants City of Morgantown and Emily Muzzarelli, Interim City Manager of

Morgantown, West Virginia [**Doc. 39**] and Defendants Governor Justice and the West Virginia Alcohol Beverage Control Administrations Motion to Dismiss [**Doc. 41**] are **GRANTED** and this case is **DISMISSED**. The clerk is directed to enter judgement in favor of the defendants and **STRIKE** this matter from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit true copies of this order to all counsel of record.

**DATED**: January 6, 2021.

**JOHN PRESTON BAILEY**
**UNITED STATES DISTRICT JUDGE**